FILED
IN CLERKS OFFICE
2026 AUG 18 P 2:56
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SUSAN HASSAN,

Plaintiff,

v.

TRANS UNION, LLC,

Defendant.

Civil Action No. ________________

JURY TRIAL DEMANDED

## COMPLAINT

1. On three derogatory accounts, the credit file disclosure that Trans Union, LLC delivered to Plaintiff Susan Hassan tells her the month and year each item is estimated to come off her file: September 2029 for a charged-off Bank of America card, October 2029 for an LVNV Funding collection, February 2032 for a Credit Collection Services collection. Under the Fair Credit Reporting Act, those removal dates can only be computed from one number, the date the account first became delinquent. Trans Union plainly has that date for each account. It disclosed the arithmetic and withheld the input: no date of first delinquency appears anywhere for either collection.

2. That is the pattern of the entire document. Ms. Hassan has been in Trans Union's files since January 13, 2010, and on January 10, 2026 she requested her file through annualcreditreport.com. Trans Union generated a forty-three page disclosure the same day under File Number 389126039. A true and complete copy is attached as Exhibit A.

3. Page after page, the disclosure withholds or garbles data Trans Union demonstrably holds. The Bank of America grid displays "- - -" in the Balance and Past Due columns for forty-seven consecutive months, November 2021 through September 2025, then

abruptly displays "$2,032" for the final three months of 2025. Two federal student loan accounts are rated "X," which the disclosure's own key defines as "Unknown," for more than a year of months in which the same grid simultaneously displays the balance, the past-due amount, the amount paid, the scheduled payment, and a deferment remark for each of those months. A closed installment account states terms of "$0 per month" while its own payment grid shows a "$30" scheduled payment in eleven months. Whole months, including September 2025 on both student loans, are blank in every data column yet still carry a rating.

4. Ms. Hassan is rebuilding her credit, and the disclosure shows it: a Kikoff charge account, a Self Financial secured card through Lead Bank, and two completed Ava Finance builder accounts, all paid as agreed. What the disclosure does not let her do is the one thing the statute guarantees: see clearly and accurately everything in her file, so she can check it, dispute what is wrong, and confirm that $2,805 in derogatory balances is accurate and will leave her file when the law requires.

5. Section 1681g(a)(1) of the FCRA obligated Trans Union to disclose, clearly and accurately, all information in Plaintiff's file upon her request. It did not do so. Plaintiff sues for willful noncompliance under 15 U.S.C. § 1681n and, alternatively, for negligent noncompliance under 15 U.S.C. § 1681o.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

7. Venue lies in this District under 28 U.S.C. § 1391(b). Plaintiff resides here, Defendant transacts business here, and Defendant delivered the deficient disclosure to Plaintiff here, in Somerville, Massachusetts.

8. The action is timely under 15 U.S.C. § 1681p. Plaintiff discovered the violations when she received the disclosure dated January 10, 2026.

## PARTIES

9. Plaintiff Susan Hassan is a natural person residing in Somerville, Middlesex County, Massachusetts, and a "consumer" under 15 U.S.C. § 1681a(c).

10. Defendant Trans Union, LLC ("Trans Union" or "Defendant") is a "consumer reporting agency" under 15 U.S.C. § 1681a(f). For monetary fees, it regularly assembles and evaluates consumer credit information in order to furnish consumer reports to third parties, uses means of interstate commerce to prepare and furnish those reports, and transacts business nationwide, including in Massachusetts. Its principal place of business is in Chicago, Illinois, and its consumer relations address, as stated on Plaintiff's disclosure, is set out below:

| Defendant | Address |
| --- | --- |
| Trans Union, LLC | TransUnion Consumer Relations, P.O. Box 2000, Chester, PA 19016-2000 |

11. At all relevant times Trans Union acted through its employees, agents, and automated systems, including its file-maintenance, dispute-processing, and disclosure-generation systems.

## FACTUAL ALLEGATIONS

### A. The Request and the Disclosure

12. On January 10, 2026, Plaintiff requested her consumer file from Trans Union through annualcreditreport.com. Trans Union generated a disclosure dated "01/10/2026" under "File Number 389126039," delivered through its annualcreditreport.transunion.com platform, and spanning forty-three pages. Exhibit A.

13. The disclosure states that Plaintiff has been on Trans Union's files "since 01/13/2010." It reports ten tradelines, no public records, and no hard inquiries; every inquiry listed is promotional or account-review in nature.

14. The disclosure's Payment/Remarks Key defines its own symbols. "OK" means "Current, paying or paid as agreed." "X" means "Unknown." "PRL" means "Profit and loss write-off." "CBG" means "Canceled by credit grantor." Cells and fields quoted below as displaying "- - -" display exactly that placeholder in the document.

**B. What the Disclosure Shows, Tradeline by Tradeline**

15. Bank of America, account 552433022680****. The header reports "Balance $2,032," "Date Updated 12/30/2025," "Pay Status >Charge-off<," "Date Opened 10/27/2021," and "Date Closed 11/26/2022." The monthly payment history displays "- - -" in both the Balance and Past Due columns for every month from November 2021 through September 2025, forty-seven consecutive months, and then displays "$2,032" in both columns for October, November, and December 2025. The grid for this account contains no amount-paid or scheduled-payment columns at all, although the disclosure's grids for Plaintiff's satisfactory accounts contain both.

16. The same account's "High Balance (Hist.)" field discloses a high-balance history covering only three months, "from 10/2025 to 12/2025," and its "Credit Limit (Hist.)" field likewise covers only "from 10/2025 to 12/2025," for an account opened in October 2021 whose monthly grid Trans Union displays back to November 2021. The Remarks column alternates between "PRL" and "CBG" in successive months from May 2025 through December 2025, displaying "PRL" in May, August, and November, "CBG" in June, September, and December, and no remark at all in July and October: the account's write-off characterization changes from

month to month. No date of first delinquency is disclosed anywhere for this account, although the disclosure states "Estimated month and year this item will be removed 09/2029."

17. LVNV Funding LLC, account 517805780444****. This "FACTORING COMPANY ACCOUNT" reports "Balance $510," "Past Due $510," "Pay Status >Collection<," "Original Creditor CAPITAL ONE PLATINUM," "Date Opened 08/29/2025," and "Date Updated 12/03/2025." No date of first delinquency is disclosed, although the disclosure states "Estimated month and year this item will be removed 10/2029." No monthly payment history of any kind is displayed for the account.

18. Credit Collection Services, account 1527****. This collection account reports "Balance $263," "Past Due $263," "Original Creditor PROGRESSIVE," "Date Opened 04/14/2025," "Date Updated 12/16/2025," and "Last Payment Made 06/05/2025." No date of first delinquency is disclosed, although the disclosure states "Estimated month and year this item will be removed 02/2032." No monthly payment history is displayed.

19. United States Department of Education/Central Research Inc, two student loan accounts under number 51000015274****, with balances of "$1,825" and "$4,229," each "Date Updated 11/30/2025" and each with "Pay Status Current Account." On each account, the September 2025 row displays "- - -" in every data column while still displaying a Rating of "OK"; the February 2023 through June 2023 rows do the same. On each account, the months of January 2024, May 2024, and every month from September 2024 through July 2025 are rated "X," defined by the disclosure's own key as "Unknown," even though the grid simultaneously displays a balance, a past-due amount of "$0," an amount paid, a scheduled payment, and, for the later months, a "PDE" payment-deferred remark for each of those same months. And on each

account, the "High Balance (Hist.)" field skips September 2025, reciting one range ending "08/2025" and a second range beginning "10/2025."

20. Ava Finance, Inc, installment account 8CVXVG8PRBE6DFT64DAKO****. The header states "Monthly Payment $0" and "Terms $0 per month, paid Monthly for 12 months," while the account's own payment grid displays a "Scheduled Payment" of "$30" in eleven of the twelve displayed months, December 2023 through October 2024. The terms field and the grid cannot both be right.

21. Ava Finance, Inc, credit card account F25R3NH7X71LHIRRK8GE2****. The "Credit Limit (Hist.)" field states "Credit limit of $2,500 from 12/2023 to 07/2024," disclosing no credit limit for August 2024 through the account's January 16, 2025 closure, months for which the grid displays complete balance and payment data.

22. JPMCB Card Services, account 426684177182****. The header discloses "High Balance $1,755," "Credit Limit $4,200," and "Last Payment Made 05/21/2022," yet the monthly grid displays ratings only, with no balance, past-due, or payment columns, for all twenty-six displayed months, May 2021 through June 2023. The account's "Date Opened" is "02/28/2019," but no monthly data of any kind is displayed for February 2019 through April 2021.

23. Barclays Bank Delaware, account 00032404577****. The header discloses "High Balance $87" and "Credit Limit $24,300," yet the monthly grid again displays ratings only, with no balance or payment data, for all displayed months, March 2019 through September 2020.

24. Plaintiff's remaining accounts, a Kikoff charge account and a Self Financial secured card issued through Lead Bank, are open, current, and paid as agreed, and their grids are materially complete. The disclosure thus demonstrates that Trans Union's systems are fully

capable of rendering a month-by-month grid with balance, past due, amount paid, and scheduled payment for every month; they simply did not do so for the accounts identified above.

**C. Trans Union Holds the Data It Withheld**

25. The disclosure itself proves possession. Start with the removal dates: 15 U.S.C. § 1681c bars reporting most adverse items more than seven years, plus the running period fixed by § 1681c(c)(1) from the commencement of the delinquency, so an "estimated month and year this item will be removed" can only be computed from the date the account first became delinquent. Trans Union printed a removal month for the Bank of America charge-off and for both collections. It therefore possesses each account's date of first delinquency. It disclosed none of them.

26. The contradictions prove possession too. A grid that rates a month "X," meaning "Unknown," while displaying that same month's balance, past-due amount, payment, and deferment remark is not missing data; it is misreporting data Trans Union displayed two columns away. A terms field reading "$0 per month" beside eleven rows of "$30" scheduled payments is the same. Two different statements about one fact inside one document mean the underlying data exists in Trans Union's file.

27. The blank spans prove possession as well. Trans Union displayed forty-seven months of "- - -" balance cells for a Bank of America account whose balance it simultaneously reported as "$2,032" in the header, as "$2,032" in the final three monthly rows, and as unchanged since the 2022 charge-off. It compressed that account's high-balance and credit-limit histories to three months while displaying the account's monthly grid back to 2021. It rated September 2025 "OK" on both student loans while displaying no September data and while

skipping September in each high-balance history, and it reported November 30, 2025 balances on both loans that are computable only from monthly data.

28. On information and belief, the furnishers of the accounts described above reported to Trans Union, monthly and in the industry-standard Metro 2 format, the very categories the disclosure omits, including monthly balances and payment amounts for each reported month and the date of first delinquency for each collection and charged-off account. Plaintiff cites these industry reporting standards solely as factual support for the allegation, on information and belief, that the furnishers reported this data to Defendant, not as an independent basis for liability.

29. On information and belief, the consumer report products Trans Union sells to its subscribers contain the categories omitted from Plaintiff's disclosure, including dates of first delinquency, complete monthly payment histories, and historical credit limits, because creditors and debt collectors rely on precisely those data points.

30. Whether the blank, missing, and self-contradictory fields identified in this Complaint reflect furnisher non-reporting, as Defendant will presumably contend, or Trans Union's maintenance and withholding of the data, as Plaintiff alleges, can be determined only from Trans Union's own systems and from the consumer report products it generates for subscribers, and Plaintiff will seek that data in discovery.

**D. The Statute Requires Disclosure of the File, Not a Summary**

31. Plaintiff requested her "file." Section 1681g(a)(1) commands that a consumer reporting agency "shall" disclose to the consumer, upon request, "all information in the consumer's file at the time of the request," and § 1681a(g) defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the

information is stored." Congress chose "file," not "consumer report," and treating the two as interchangeable would collapse definitions the statute keeps separate. Nunnally v. Equifax Info. Servs., Inc., 451 F.3d 768, 773 (11th Cir. 2006).

32. The information at issue here, monthly balances and payments, dates of first delinquency, historical credit limits, and account status data, was furnished to Trans Union by creditors and debt collectors and is of the kind included in the consumer reports Trans Union sells. It is not internal audit-trail material, which distinguishes this case, on its own terms, from Gillespie v. Trans Union Corp., 482 F.3d 907 (7th Cir. 2007). Cortez v. Trans Union, LLC, 617 F.3d 688, 712 (3d Cir. 2010), confirms at the appellate level that the § 1681g file disclosure reaches all information in the file, not the subset the agency elects to show.

33. A claim under § 1681g(a)(1) does not require Plaintiff to plead an inaccuracy under § 1681e(b) or § 1681i; the disclosure duty is distinct from the statute's inaccurate-reporting provisions. Blevins v. Equifax Info. Servs., LLC, No. 25-cv-23481-BB (S.D. Fla. Dec. 29, 2025), Dkt. 24; Stafford v. Trans Union, LLC, No. 4:25-cv-00921-JDK (E.D. Tex.), Report and Recommendation, Doc. 25 (Nov. 17, 2025) (recommending denial of dismissal of a § 1681g(a)(1) claim based on omitted tradeline and payment-history data), adopted over objections, Doc. 30 (Feb. 25, 2026). Plaintiff nonetheless pleads the deficiencies both as omissions and, where the disclosure contradicts itself, as affirmative inaccuracies on its face.

34. The disclosure right exists so consumers can learn what their files contain and correct errors before dissemination. TransUnion LLC v. Ramirez, 594 U.S. 413, 440 (2021). Each omission here defeats that purpose in a concrete way. Without the dates of first delinquency, Plaintiff cannot verify that the removal dates Trans Union computed are lawful, or frame an informed dispute about how long $2,805 in derogatory balances will shadow her file.

Without complete monthly histories, she cannot check any given month against her own records. Ratings of "Unknown" over displayed data, and terms that contradict the grid beneath them, leave her unable to tell which version of her own file is true.

35. Nothing elsewhere in the disclosure, viewed in its entirety, supplies the omitted information or cures the deficiencies identified above; the omitted data appears nowhere in the forty-three pages.

**E. A Template Pattern, Not Isolated Error**

36. Exhibit D itemizes the deficiencies field by field, with verbatim quotations. The January 10, 2026 disclosure contains in excess of twenty distinct blank, missing, or internally conflicting data fields across nine tradelines furnished by seven unrelated furnishers.

37. The categories repeat across furnishers that have nothing to do with one another: dates of first delinquency withheld on every adverse account; multi-month and multi-year blank spans in the balance columns; ratings-only grids for some closed accounts; historical high-balance and credit-limit fields truncated to fragments; identical September 2025 holes on two separate student loans. Uniform categories of omission across unrelated furnishers reflect system design, not coincidence. Cf. Williams v. First Advantage LNS Screening Sols., Inc., 947 F.3d 735 (11th Cir. 2020).

38. On information and belief, these deficiencies result from the automated templates and business rules Trans Union's disclosure-generation systems apply to consumer file requests made through annualcreditreport.com, they have been known to Trans Union for years, and they affect other consumers who request their files, not only Plaintiff.

**F. Trans Union Acted Willfully**

39. On January 23, 2024, the Consumer Financial Protection Bureau published an Advisory Opinion on the file-disclosure obligation, 89 Fed. Reg. 4167 (Jan. 23, 2024) (Exhibit B), advising that a consumer reporting agency must, on request, disclose all information in the consumer's file, in a form the consumer can understand and use.

40. Trans Union generated Plaintiff's disclosure on January 10, 2026, almost two years later. After January 23, 2024, no reading of "file" that excludes furnished tradeline data, monthly payment history, or the delinquency dates governing an item's lifespan remained objectively reasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69-70 (2007); authoritative guidance directly on the pled statute forecloses the safe harbor a defendant might otherwise claim for a narrow construction.

41. The Federal Trade Commission told the industry the same thing more than twenty-five years earlier in its Advisory Opinion to Darcy (June 30, 2000) (Exhibit C): § 1681g requires disclosure of all information in the consumer's file at the time of the request.

42. Trans Union nonetheless delivered the disclosure described above, exhibiting a systemic, template-driven pattern of withheld and self-contradictory data. Its noncompliance was knowing or, at minimum, reckless, and recklessness satisfies willfulness under the FCRA. Safeco, 551 U.S. at 57-58.

**G. Concrete Harm**

43. Trans Union's deficient disclosure denied Plaintiff information the statute entitles her to and caused her concrete injury.

44. Plaintiff cannot verify $2,805 in derogatory balances on her Trans Union file: the "$2,032" Bank of America charge-off, the "$510" LVNV Funding collection, and the "$263" Credit Collection Services collection. She cannot confirm any of the three removal dates Trans

Union computed, because the dates of first delinquency from which they derive are withheld; she therefore cannot tell whether derogatory items will remain on her file longer than 15 U.S.C. § 1681c allows. She cannot reconcile the student loan months her disclosure rates "Unknown" against the complete data displayed for those same months, and she cannot check the forty-seven blank Bank of America months against her own records.

45. These omissions impair Plaintiff's ability to exercise her dispute rights under 15 U.S.C. § 1681i in an informed manner. An effective dispute about the amount, age, or status of a debt requires exactly the fields Trans Union withheld.

46. The harm lands on a consumer the disclosure itself shows to be actively rebuilding credit through small builder accounts, whose most sensitive derogatory data is precisely what she cannot see or verify.

47. Plaintiff has also expended substantial time and resources reviewing the forty-three page disclosure, mapping its internal contradictions, and preparing this action.

48. Plaintiff's injuries bear a close relationship to harms traditionally recognized at law, including the denial of legally required information with adverse downstream consequences. Tailford v. Experian Info. Sols., Inc., 26 F.4th 1092 (9th Cir. 2022).

49. Independently, because the violations were willful, the FCRA authorizes statutory damages without proof of actual damages, 15 U.S.C. § 1681n(a)(1)(A), and the willfulness allegations themselves support standing. Safeco, 551 U.S. at 54; Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 622 (7th Cir. 2007); Stafford, Doc. 30 at 3-4.

## COUNT I

## WILLFUL FAILURE TO MAKE A CLEAR AND ACCURATE FILE DISCLOSURE

## 15 U.S.C. § 1681g(a)(1), Enforced Through 15 U.S.C. § 1681n

50. Plaintiff realleges and incorporates every preceding paragraph as if fully set forth herein.

51. Upon Plaintiff's January 10, 2026 request, 15 U.S.C. § 1681g(a)(1) required Trans Union to clearly and accurately disclose all information in her file at the time of the request.

52. Trans Union failed to comply. Its disclosure withheld information in Plaintiff's file, including every adverse account's date of first delinquency, years of monthly balance and payment data, and historical credit-limit and high-balance data, and it disclosed other information inaccurately and unclearly, including months rated "Unknown" alongside their own complete data, alternating write-off remarks, and account terms contradicted by the account's own grid, all as alleged above and itemized in Exhibit D.

53. Trans Union's noncompliance was willful under 15 U.S.C. § 1681n. It acted in knowing or reckless disregard of obligations of which the CFPB's January 23, 2024 Advisory Opinion and the FTC's June 30, 2000 Darcy opinion gave unmistakable notice, and the uniform, template-driven character of the deficiencies across unrelated furnishers evidences policy rather than accident.

54. Plaintiff is entitled to actual damages or statutory damages of not less than one hundred dollars and not more than one thousand dollars per violation under 15 U.S.C. § 1681n(a)(1)(A), punitive damages under 15 U.S.C. § 1681n(a)(2), and costs under 15 U.S.C. § 1681n(a)(3).

**COUNT II**

**NEGLIGENT FAILURE TO MAKE A CLEAR AND ACCURATE FILE DISCLOSURE**

**15 U.S.C. § 1681g(a)(1), Enforced Through 15 U.S.C. § 1681o, in the Alternative**

55. Plaintiff realleges and incorporates every preceding paragraph as if fully set forth herein.

56. In the alternative, if Trans Union's failure to comply with 15 U.S.C. § 1681g(a)(1) was not willful, it was negligent: Trans Union failed to exercise the care the statute demands of a consumer reporting agency in generating and delivering Plaintiff's file disclosure.

57. Trans Union's negligent noncompliance directly and proximately caused the actual damages alleged above, which Plaintiff may recover, with costs, under 15 U.S.C. § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Susan Hassan respectfully requests that the Court enter judgment against Defendant Trans Union, LLC and award:

(a) actual damages under 15 U.S.C. § 1681n(a)(1)(A) or, in the alternative, 15 U.S.C. § 1681o(a)(1);

(b) statutory damages of not less than one hundred dollars and not more than one thousand dollars for each willful violation, under 15 U.S.C. § 1681n(a)(1)(A);

(c) punitive damages under 15 U.S.C. § 1681n(a)(2);

(d) the costs of this action under 15 U.S.C. § 1681n(a)(3) or § 1681o(a)(2);

(e) an order directing Trans Union to provide Plaintiff a complete, clear, and accurate disclosure of all information in her file as 15 U.S.C. § 1681g(a)(1) requires;

(f) leave to amend, which Plaintiff reserves the right to seek, to assert additional claims, including under 15 U.S.C. § 1681i, should further documentation or discovery support them; and

(g) such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: 8-18-26

Susan Hassan

Susan Hassan
Plaintiff, Pro Se
50R College Ave, Apt 1
Somerville, MA 02144
(781) 874-0643